IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERISURE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>BURLINGTON INSURANCE GROUP, INC.,<br>d/b/a The Burlington Insurance Company<br><br>Defendant. | ) | Case No. 25 C 4455<br><br>Judge Robert W. Gettleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Amerisure Insurance Company sued defendant Burlington Insurance Group, Inc. ("TBIC"), along with two other defendants, The George Sollitt Construction Company ("Sollitt") and the Chicago Park District, for a declaratory judgment that TBIC owes "primary and non-contributory [insurance] coverage" to Sollitt and the Park District in a separate Illinois state court action. According to Amerisure's complaint, the Park District hired Sollitt as a general contractor for a renovation project. Sollitt in turn took out a general liability insurance policy from Amerisure (the "Amerisure Policy"), covering itself and the Park District (as an "additional insured"). Sollitt then subcontracted with another company, International Equipment, Inc., to perform scaffolding work. Under that subcontract, International needed to obtain primary and non-contributory liability coverage for Sollitt and the Park District (as additional insureds) for its work. Amerisure alleges that International purchased such insurance from defendant TBIC (the "TBIC Policy").

After work on the project began, one of International's laborers, Gerardo Aleman, allegedly fell into a hole at the worksite. He has since sued the Park District and Sollitt in

Illinois state court for negligence, seeking damages for his injuries. Amerisure agreed to defend Sollitt and the Park District under the Amerisure policy, subject to a reservation of rights to pursue all available primary insurance, and has been litigating the Aleman lawsuit on Sollitt's and the Park District's behalf.

Believing that Aleman's lawsuit triggered TBIC's duty under the TBIC Policy to defend and indemnify Sollitt and the Park District, Amerisure filed this federal diversity action, asserting three counts seeking a declaratory judgment: that Sollitt and the Park District qualify as additional insureds on the TBIC policy on a primary and non-contributory basis (Count I); that TBIC is estopped from contesting coverage (Count II); and that TBIC must reimburse Amerisure for defense-related costs in the Aleman lawsuit (Count III). In response, TBIC filed a single "Count I" counterclaim, in which TBIC seeks a declaratory judgment that the TBIC Policy is not triggered by Aleman's allegations, and that TBIC is thus not obligated under the TBIC Policy to defend or indemnify Sollitt or the Park District.

Amerisure and TBIC have cross-moved for summary judgment. For the reasons below, the court grants Amerisure's motion in part and denies it in part, and denies TBIC's motion.

**BACKGROUND**

The Park District and Sollitt entered into an agreement to have Sollitt renovate the "Ridge Park Fieldhouse" on South Longwood Drive, Chicago, Illinois. Sollitt then took out the Amerisure Policy, which was effective from June 30, 2022, to June 30, 2023, and which had a $1 million per occurrence policy limit. Under that policy, Sollitt is the named insured and the Park District is an additional insured.

In March 2023, Sollitt entered into a subcontract with International to perform scaffolding services on the project. The subcontract required International to name Sollitt and the Park District as additional insureds under International's own liability policy. So International took out the TBIC Policy, which was effective from January 1, 2023 to January 1, 2024, and which also included a $1 million per occurrence policy limit. According to a certificate of insurance that was produced on March 6, 2023, Sollitt and the Park District are listed as additional insureds.

On May 15, 2023, International's employee, Aleman, was injured while working at the project within the scope of his employment. In January 2024, Aleman filed a complaint in Illinois state court against several defendants, including the Park District, seeking damages for his alleged injuries. Roughly a month later, one of the defendants filed a third-party complaint against International, seeking contribution in Aleman's lawsuit because International allegedly caused his injuries.

In May 2024, TBIC sent International a letter in which it denied coverage for International's defense or indemnification in Aleman's lawsuit, citing an "employer's liability exclusion" and a modified definition of "employee" under the TBIC policy. TBIC stated: "Aleman meets the definition of an employee and the TBIC policy reads that this insurance does not apply to bodily injury to an employee occasioned in the course and scope of employment."

Roughly a week later, Aleman filed a first amended complaint against the Park District. And about two months after that, in July 2024, Sollitt and the Park District tendered the Aleman first amended complaint to International and TBIC, demanding that TBIC defend and indemnify Sollitt and the Park District as additional insureds under the TBIC Policy. TBIC denied the

tender, citing to the employer's liability exclusion and modified definition of "employee" under the TBIC policy.

Given TBIC's refusal to defend the Park District and Sollitt in the Aleman lawsuit, Amerisure issued a reservation of rights letter in August 2024, wherein it accepted their defense. In email correspondence between Amerisure and TBIC that same month, an Amerisure Senior Claims Specialist stated: "At first, I disagreed with your position. However, I see that your policy modifies who is an 'employee'. Please sent me a copy of your policy so that we can review."

Thereafter, in September 2024, Aleman filed a second amended complaint against the Park District, Sollitt, and others. Then, in late October 2024, Amerisure sent TBIC a letter, (1) demanding that TBIC defend and indemnify the Park District and Sollitt as additional insureds under the TBIC Policy on primary and non-contributory basis, and (2) demanding reimbursement of all defense fees and costs that Amerisure had incurred. The next day, Sollitt sent a second tender letter to International and TBIC, demanding that they defend and indemnify Sollitt as an additional insured. TBIC refused to accept the tenders, has disclaimed coverage for the Park District and Sollitt, and has not provided any defense or indemnification to the Park District or Sollitt. Amerisure has litigated the Aleman Lawsuit on behalf of the Park District and Sollitt, and in doing so, has incurred fees, costs and expenses.

So on April 24, 2025, Amerisure filed its complaint here against TBIC, the Park District, and Sollitt, asserting three counts, which seek a declaratory judgment: that Sollitt and the Park District qualify as additional insureds on the TBIC policy on a primary and non-contributory basis; that TBIC is estopped from contesting coverage to them; and that TBIC owes Amerisure reimbursement for defending them. Amerisure's complaint stated that "[n]o direct relief is

sought against" Sollitt or the Park District, and that they have "been included in this action as a required party to be bound by the judgment."

A few weeks later, Aleman filed his third amended complaint (which is the operative complaint in that case) against the Park District, Sollitt, and others, continuing to seek damages for the alleged injuries he sustained while acting within the scope of his employment with International. He alleges that, based on the Park District's and Sollitt's negligence, he suffered injuries when he fell into the open hole while working as International's employee at the project site. And he asserts eight counts, including negligence claims against the Park District and Sollitt.

At the end of May 2025, TBIC moved in this case for an "order requiring [Amerisure] to join [Aleman as] a necessary party [defendant] under" Fed. R. Civ. P. 12(b)(7). Shortly thereafter, the court dismissed Sollitt without prejudice based on a stipulation of dismissal. The court then found that TBIC had failed to establish that Aleman was a required party under Rule 19(a)(1), and denied TBIC's motion.

TBIC thereafter answered the complaint in August 2025. In doing so, it filed a counterclaim against Amerisure, a cross claim against the Park District and Sollitt, and a third-party complaint against Aleman—all in the form of a single "Count I" under the heading "Employer Liability Exclusion." TBIC states in its counterclaim that "Aleman is named as a necessary party herein and no affirmative relief against him is sought." TBIC requests a declaratory judgment: that the TBIC Policy does not provide coverage for the matters alleged in Aleman's case; and that TBIC is not obligated under the TBIC Policy to defend or indemnify Sollitt or the Park District in that case.

The court has since dismissed the Park District with prejudice based on another stipulation of dismissal.

## DISCUSSION

Both Amerisure and TBIC have moved for summary judgment. Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it affects the outcome of the case under the governing law and a dispute is "genuine" if the evidence is such that a reasonable factfinder could return a verdict for the nonmovant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

On summary judgment, the court determines whether the parties have provided sufficient evidence to support a factual dispute that warrants submission to a factfinder for resolution at trial. See id. at 249. The court must view all facts in the light most favorable to the nonmovant and draw all reasonable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In the end, the court must analyze the motion in light of both the applicable substantive law and the question of whether a reasonable factfinder could return a verdict for the nonmovant. Checkers, Simon & Rosner v. Lurie Corp., 864 F.2d 1338, 1344 (7th Cir. 1988). If the record as a whole could not lead a reasonable factfinder to find for the nonmovant, there is no genuine issue for trial and summary judgment is appropriate. See Matsushita Elec., 475 U.S. at 587.

That Amerisure and TBIC have cross-moved does not disturb this framework. Indeed, "[t]he ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment: [the court] construe[s] all facts and inferences arising from them in favor of

the party against whom the motion under consideration is made." Blow v. Bijora, Inc., 855 F.3d 793, 797 (7th Cir. 2017). "Cross-motions must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute." Bloodworth v. Vill. of Greendale, 475 F. App'x 92, 95 (7th Cir. 2012). Even when the parties agree that there is no genuine dispute over material facts, the court can still deny both motions if the parties fail to establish their right to judgment as a matter of law. Tokio Marine Specialty Ins. Co. v. Altom Transp., Inc., 618 F. Supp. 3d 791, 795 (N.D. Ill. 2022). With these principles in mind, the court turns to the parties' arguments.

## Choice of Law

Amerisure first argues: that Illinois' choice-of-law rules apply here because the court is sitting in diversity in Illinois; that Illinois' rules apply the "most significant contacts" test; and that under that test, Illinois law should govern here. TBIC responds, stating that it "does not challenge application of Illinois law." The court thus applies Illinois law here. See Nationwide Ins. Co. v. Cent. Laborers' Pension Fund, 704 F.3d 522, 525 (7th Cir. 2013) (applying Illinois law where "[t]he parties agree that the substantive law of Illinois governs this diversity action"); Emplrs. Mut. Cas. Co. v. Skoutaris, 453 F.3d 915, 923 (7th Cir. 2006) ("As this case is brought under diversity jurisdiction, we apply the law of the forum state, Indiana, since neither party has challenged the district court's choice of law.").

## Whether TBIC has a Duty to Defend the Park District and Sollitt under the TBIC Policy

Amerisure argues that, under the TBIC Policy, "TBIC owes additional insured coverage to [the Park District] and Sollitt," and that TBIC has a "duty to defend them" under the policy

that "has been triggered" by Aleman's lawsuit. In response, TBIC asserts that "there is no dispute that [the Park District and Sollitt] qualify as additional insureds by definition through endorsement." But, TBIC contends, the TBIC Policy's employer's liability exclusion precludes coverage here.

"Under Illinois law, the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment." Nationwide, 704 F.3d at 525 (citation omitted). An "insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." Westfield Ins. Co. v. Vandenberg, 796 F.3d 773, 777 (7th Cir. 2015) (quoting Hobbs v. Hartford Ins. Co. of the Midwest, 823 N.E.2d 561, 564 (2005)). "When interpreting an insurance policy," the court's "primary objective is to ascertain and give effect to the intention of the parties, as expressed in the policy language." Id. at 777-78 (cleaned up). To achieve that objective, the court "must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." Id. at 778.

"In determining whether [TBIC] has a duty to defend" Sollitt and the Park District, the court "may only consider the allegations in the state complaint in concert with the provisions of the Policy." Nationwide, 704 F.3d at 525. "If the underlying complaint alleges facts within or potentially within policy coverage," the court "will find a duty to defend." Id. (cleaned up). "If the relevant policy language is clear and unambiguous, it must be given its plain and ordinary meaning." Id. "But all doubts and ambiguities must be resolved in favor of the insured." Id. (cleaned up). Indeed, "[u]nder Illinois law, courts liberally construe both the terms of an

insurance policy and the allegations in the underlying complaint in favor of the insured." Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co., 796 F.3d 717, 723 (7th Cir. 2015).

Still, "the burden is on the insured to prove that its claim falls within the coverage of an insurance policy." Artisan & Truckers Cas. Co. v. Hanover Ins. Co., 126 F. Supp. 3d 998, 1001 (N.D. Ill. 2015) (citation omitted). If it does so, "the burden then shifts to the insurer to prove that a limitation or exclusion applies." Id. (citation omitted); see Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co., 611 F.3d 339, 347 (7th Cir. 2010) ("Insurers have the burden of proving that an exclusion applies."). To meet that burden, the insurer must show that it is "'clear and free from doubt' that the exclusion applies." Santa's Best Craft, 611 F.3d at 348 (citations omitted).

The court first finds that Amerisure has met its burden to show that Sollitt's and the Park District's claims fall within the coverage of the TBIC Policy. "Section I" of the "Commercial General Liability Coverage Form" in the TBIC Policy provides in relevant part:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.
>
> Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.
>
> **SECTION I – COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we

> will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> (2) The "bodily injury" or "property damage" occurs during the policy period; . . . .

The TBIC Policy thus provides: (1) that TBIC "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies" and "will have the . . . duty to defend the insured against any 'suit' seeking those damages"; and (2) that the "bodily injury" must have been "caused by an 'occurrence'"—which "Section V – Definitions" defines as an "accident"—that "occurs during the policy period." (Emphasis added).[1]

Here, Aleman filed the underlying state suit against Sollitt and the Park District seeking damages for injuries he allegedly sustained in an accident on May 15, 2023—which is during the policy period of the TBIC Policy—while working as International's employee at the project site. So if the phrase "the insured" includes Sollitt and the Park District, then Aleman's allegations in the underlying state court complaint plainly "allege facts within or potentially within policy coverage." Nationwide, 704 F.3d at 525 (cleaned up). Amerisure suggests that taken

[1] The court notes that Amerisure relies on the Commercial General Liability Coverage Form, and TBIC appears to rely on an "Illinois – Amendment" endorsement in the TBIC Policy, which modifies the Commercial General Liability Coverage. There is a third requirement related to the "bodily injury" in the Commercial General Liability Coverage Form and in the "Illinois – Amendment." Although the third requirement in both generally relates to issues arising before the policy period, they are not identical. Nevertheless, for purposes of these motions, the other relevant language appears to be the same, and neither party argues that there is any relevant difference, or that the third requirement has any effect in this case.

"[t]ogether, the Subcontract, the TBIC Policy, and the Certificate of Insurance establish that" Sollitt and the Park District are additional insureds that are included within the phrase "the insured." TBIC, as noted above, states that "there is no dispute that these entities qualify as additional insureds by definition through endorsement."

The court agrees with the parties that Sollitt and the Park District are additional insureds. As shown above, the Commercial General Liability Coverage Form explains that "You" and "Your" refer to the "Named Insured" (International) and that the word "insured" means any organization "qualifying as such under Section II – Who is An Insured." The TBIC Policy further includes an "additional insured" endorsement, which modifies the Commercial General Liability Coverage and provides in relevant part:

> Name of Additional Insured Person(s) or Organization(s)
>
> Any person or organization for whom you are performing operations, but only if you have agreed, in a written contract, to add such person or organization as an additional insured on your policy for that location or part thereof, provided such a written contract is fully executed prior to an "occurrence" in which coverage is sought under this policy.
>
> **A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> 1. Your acts or omissions; or
> 2. The acts or omissions of those acting on your behalf[ ] in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

So under this endorsement, "additional insureds" include any "organization for whom you [International] are performing operations, but only if you [International] agreed, in a written contract, to add such . . . organization as an additional insured on your [International's] policy . . . ." Here, the Sollitt-International subcontract (at Articles 6 and 27) and the certificate of

insurance show that International agreed in writing that Sollitt and the Park District would be additional insureds.

As shown above, moreover, the "additional insured" endorsement further amends "Section II – Who is An Insured" to "include as an additional insured" those organizations that International agreed in writing to include (i.e., Sollitt and the Park District), "but only with respect to liability for 'bodily injury' . . . caused, in whole or in part, by . . . [International's] acts or omissions . . . in the performance of [International's] ongoing operations for the additional insured(s) . . . ." Although Aleman does not assert claims directly against International, given that Aleman was International's employee and was allegedly injured while performing International's subcontracted operations, his allegations sufficiently suggest that liability may have been caused at least "in part" by International's acts or omissions. That suggestion is further bolstered by the fact that one of the defendants in the Aleman lawsuit filed a third-party complaint against International, seeking contribution because International allegedly caused Aleman's injuries. The Park District and Sollitt are thus additional insureds under the TBIC Policy.

Putting this all together, then, under the terms of the TBIC Policy, TBIC has a "duty to defend the insured [which includes the additional insureds, Sollitt and the Park District] against [Aleman's] 'suit' seeking . . . damages" from "the insured [which again includes the additional insureds, Sollitt and the Park District]" "because of [Aleman's] 'bodily injury.'" Amerisure has therefore met its burden to show that Sollitt's and the Park District's claims fall within the coverage of the TBIC Policy.

The burden accordingly shifts to TBIC to show that an exclusion applies. As noted above, TBIC argues here that the employer's liability exclusion in the TBIC Policy precludes coverage. The employer's liability exclusion provides in relevant part (with underlining emphasis added):

> **2. Exclusions**
>
> This insurance does not apply to: . . .
>
> **e. Employer's Liability**
>
> "Bodily injury" to:
>
> (1) An "employee" of the insured arising out of and in the course of:
>
> (a) Employment by the insured; or
>
> (b) Performing duties related to the conduct of the insured's business; . . . .

TBIC points out that the TBIC Policy further includes an endorsement that modifies the definition of "employee" in multiple coverages, including the Commercial General Liability Coverage, and that provides in relevant part (with underlining emphasis added):

> **A.** Paragraph **D.** of this endorsement replaces Definition **J.** of **Section V – Definitions** under the Auto Dealers Coverage Form.
>
> **B.** Paragraph **D.** of this endorsement replaces Definition **5.** of **Section V – Definitions** under the Commercial General Liability Coverage Form.
>
> **C.** Paragraph **D.** of this endorsement replaces Definition **G.** of **Section V – Definitions** under the Garage Coverage Form.
>
> **D.** "Employee" means a person working for salary or wages, or any substitute for salary or wages, as compensation in any manner by any insured, under any contract of hire, express or implied, oral or written, where the insured, as employer, has the power or right to control and direct the employee. "Employee" includes a person hired by the hour, day or any other irregular or intermittent period. "Employee" includes a "leased worker" or "temporary worker".

TBIC contends that "[t]he use of 'any insured' in the . . . definition of 'employee' was intended to (and did) broaden the scope of the exclusion to preclude the coverage" to not just the Named Insured (International) but also any additional insureds (Sollitt and the Park District).

The court disagrees. Although the modified definition of "employee" might broaden who can qualify as an "employee" to someone compensated by "any insured," the exclusion itself still includes the narrower "the insured" phrase after "employee." Plugging the definition of "employee" into the exclusion, then, looks like this (with underlining emphasis added):

> the insurance does not apply to: . . . '[b]odily injury' to . . . [a]n 'employee' ['a person working for salary or wages . . . as compensation . . . by any insured . . .'] of the insured arising out of and in the course of . . . [e]mployment by the insured . . . or [p]erforming duties related to the conduct of the insured's business . . . .

When this is read together with the "Separation of Insureds" clause (also known as a "severability" clause) in the TBIC Policy, it becomes clear that the exclusion precludes coverage to only the particular "insured" that employs (pays and controls) the "employee" who suffered the bodily injury. Indeed, the Separation of Insureds clause is found in section IV of the TBIC Policy and provides:

> **7. Separation Of Insureds**
>
> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
>
> . . .
>
> **b**. Separately to each insured against whom claim is made or "suit" is brought.

As TBIC itself notes in its reply brief, "[b]efore 1955, 'the insured' was construed to mean 'any insured.'" So, TBIC explains, "[t]he separation of insureds clause was adopted to clarify that 'the insured' was to apply separately to each individual insured." That means here that when the Park District or Sollitt asks for a defense, the phrase "the insured" in the exclusion

refers to "the Park District" or "Sollitt," separately and respectively. Because Aleman was not being paid and controlled by either the Park District or Sollitt, he was not an "'employee' of the insured," and the exclusion would not exclude either of them.

This conclusion makes sense given the traditional interplay between employer's liability exclusions and severability clauses. An "employer's liability exclusion recognizes that general liability coverage is unnecessary for an employer whose employee is injured in the course of his employment since the workman's compensation system (and the required workman's compensation's insurance coverage) covers such an injury." Archer Daniels Midland Co. v. Burlington Ins. Co. Grp., 785 F. Supp. 2d 722, 730 (N.D. Ill. 2011) (cleaned up). And "[i]n general, severability clauses are intended to treat each entity covered under the policy as if each were insured separately." Id. at 729-30. "Read together," then, "an employer's liability exclusion precludes over-coverage (where an employer has both workman's compensation insurance and commercial liability insurance for an employee's injury) by excluding claims stemming from an employee's bodily injury sustained in the course of his employment"; a "severability clause precludes under-coverage (where a party is left without either workman's compensation insurance or commercial liability insurance) by limiting the employee exclusion to the actual employer of the injured party." Id. (cleaned up).

TBIC has failed to show the court that TBIC modified the definition of "employee," intending to alter this traditional relationship. According to TBIC, "there was no reason for TBIC to modify the definition of 'employee' if the result was to limit application of the Employers Liability Exclusion only to employees of the named insured." But that is incorrect. Indeed, the "employee" endorsement itself expressly states precisely what it was meant to

modify: the definition of "employee" under three separate coverages—including "Definition 5. of Section V – Definitions under the Commercial General Liability Coverage Form." The original definition of "Employee" there stated:

> **5.** "Employee" includes a "leased worker". 'Employee' does not include a 'temporary worker'."

The endorsement then explicitly alters that original "Definition 5" by stating in the last sentence of the new definition: "'Employee' includes a 'leased worker' or 'temporary worker.'" (Emphasis added). So contrary to TBIC's assertion, there was a reason for TBIC to modify the definition of "employee" that had nothing to do with the employer's liability exclusion.

The fact is, had TBIC wanted the employer's liability exclusion to apply to an injury to an employee of any insured, TBIC could have written the exclusion itself to say "any insured." It did not do so. The court thus finds that TBIC has not shown that it is "clear and free from doubt" that the employer's liability exclusion applies to preclude coverage to Sollitt and the Park District. Santa's Best Craft, 611 F.3d at 348 (cleaned up).

In sum, the court finds that Amerisure has shown that Sollitt's and the Park District's claims fall within the coverage of the TBIC Policy, and that TBIC has failed to show that the employer's liability exclusion precludes that coverage. The court therefore grants summary judgment in favor of Amerisure, holding that TBIC has a duty to defend the Park District and Sollitt in the underlying lawsuit.

**Whether Coverage under the Amerisure Policy is Excess to the TBIC Policy**

Amerisure contends that the Amerisure Policy is excess to the coverage under the TBIC Policy. According to Amerisure, the "Amerisure Policy's Additional Insured Endorsement and Other Insurance clauses" read together "with the [Park District]-Sollitt Agreement . . . make

clear that any coverage afforded to [the Park District] and Sollitt is excess to other available primary insurance – namely, the TBIC Policy." As a result, Amerisure concludes, TBIC must respond first and Amerisure need only respond after the TBIC Policy limits are exhausted. Amerisure further contends that because TBIC bears the primary duty to defend the Park District and Sollitt, TBIC must reimburse Amerisure for the defense costs it has incurred.

In response, TBIC argues that even if it "has a duty to defend despite the cited [employer's liability] exclusion [in the TBIC Policy], any additional insured coverage is primary and non-contributory as to Sollitt only" under the TBIC Policy. The TBIC Policy, TBIC asserts, "modifies its Other Insurance clause by amendment to limit primary and non-contributory status for an additional insured ***who is the named insured under the other policy***." (Emphasis by TBIC). Because "Sollitt is the sole named insured under the Amerisure policy," TBIC concludes, "the TBIC policy is primary and non-contributory as to Sollitt only," "[a]ny reimbursement owed to Amerisure is limited to the costs in defending Sollitt," and "Amerisure is required to share the defense costs relating to [the Park District] with TBIC."

The court finds that TBIC must provide primary and noncontributing insurance for Sollitt, must provide primary insurance to the Park District, and must reimburse Amerisure for defense costs it has incurred for both entities. The standard "Other Insurance" provision in the TBIC Policy provides in relevant part:

> **4. Other Insurance**
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:
>
> **a. Primary Insurance**
>
> This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other

> insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.
>
> **b. Excess Insurance**
>
> **(1)** This insurance is excess over: . . .
>
> **(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured. . . .
>
> **c. Method Of Sharing**
>
> If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

The "Primary and Noncontributory" endorsement in the TBIC Policy then states in relevant part:

> The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:
>
> This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:
>
> **(1)** The additional insured is a Named Insured under such other insurance; and
>
> **(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

The court agrees with TBIC that the endorsement applies only to Sollitt. Amerisure argues that "[t]he endorsement extends additional insured status on the same terms" to both Sollitt and the Park District. But the endorsement plainly states that the insurance is both primary and noncontributory "to an additional insured . . . provided . . . [t]he additional insured is a Named Insured under such other insurance." (Emphasis added). There is no dispute here that

Sollitt is the sole "Named Insured" under the Amerisure Policy. So the court agrees with TBIC that the TBIC Policy is "primary and non-contributory" only as to Sollitt.

As to Sollitt, moreover, the Amerisure Policy has the following relevant provision:

> **4. Other Insurance**
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
> **a. Primary Insurance**
>
> This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in paragraph c. below.
>
> **b. Excess Insurance**
>
> (1) This insurance is excess over: . . .
>
> (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.
>
> (2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers. . . .

As can be seen, section 4(b)(1)(b) provides that the Amerisure insurance is "excess over . . . (b) [a]ny other primary insurance available to [Sollitt] covering liability for damages arising out of the . . . operations . . . for which [Sollitt] have been added as an additional insured." Because Sollitt is an additional insured under the TBIC Policy and the TBIC Policy is primary (and noncontributory), the Amerisure Policy applies only in excess to the TBIC Policy. Section 4(b)(2) further provides that Amerisure "will have no duty . . . to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit.'" So for Sollitt,

TBIC is primary and cannot force Amerisure to contribute to (or share) the defense costs. The court thus agrees with Amerisure that, as to Sollitt, Amerisure need only respond after the TBIC Policy limits are exhausted, and that TBIC must reimburse Amerisure for defense costs.

Turning to the Park District, because the TBIC Policy's "Primary and Noncontributory" endorsement does not apply to it, the court looks back to the default "Other Insurance" provision in the TBIC Policy. Again, that provision provides in relevant part (with underlining emphasis added):

> **a. Primary Insurance**
>
> This insurance is primary except when Paragraph **b.** below applies. . . .
>
> **b. Excess Insurance**
>
> **(1)** This insurance is excess over: . . .
>
> **(b)** Any other primary insurance available to <u>you</u> covering liability for damages arising out of the premises or operations, or the products and completed operations, for which <u>you</u> have been added as an additional insured. . . .

As explained above, "you" refers to the Named Insured under the TBIC Policy—International. Because the Park District is not "you," the condition in section 4(b)(1)(b) does not apply. So the TBIC insurance is primary (though, not noncontributory) to the Park District.

Turning to the Amerisure Policy, there is an "additional insured" endorsement in the Amerisure Policy that applies to the Park District and that includes an "Other Insurance" provision, which states in relevant part (with underlining emphasis added):

> h. SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, paragraph 4. Other Insurance is deleted and replaced with the following:
>
> 4. Other Insurance.
>
> Coverage provided by this endorsement is <u>excess</u> over any other valid and collectible insurance available to <u>the additional insured</u> whether:

> a. Primary;
>
> b. Excess;
>
> c. Contingent; or
>
> d. On any other basis;
>
> but if the written contract, written agreement, or certificate of insurance requires primary and non-contributory coverage, this insurance will be primary and non-contributory relative to other insurance available to the additional insured which covers that person or organization as a Named Insured, and we will not share with that other insurance.
>
> i. If the written contract, written agreement, or certificate of insurance as outlined above requires additional insured status by use of CG 20 10 11 85, then the coverage provided under this CG 70 48 endorsement does not apply except for paragraph 2.h. Other Insurance. Additional insured status is limited to that provided by CG 20 10 11 85 shown below and paragraph 2.h. Other Insurance shown above.

As shown, coverage is "excess over any other valid and collectible insurance available to the additional insured"—here, that is the Park District. And the "but if" language would not apply because the Park District is not the "Named Insured" under the TBIC Policy. Because the Park District has other insurance available—namely, the TBIC policy—Amerisure's Policy is excess and TBIC's Policy remains primary. So although the TBIC Policy's "primary and noncontributory" endorsement does not apply to the Park District, that merely means that TBIC retained a right to seek contribution if Amerisure were also primary. But because Amerisure insurance is only in excess, TBIC has no right to contribution.

In sum, the TBIC Policy is primary for both Sollitt (by endorsement) and the Park District (by standard form), and the Amerisure Policy is excess for both. The court thus grants summary judgment in favor of Amerisure, holding that TBIC must reimburse Amerisure for the defense costs incurred for Sollitt and the Park District.

**Whether TBIC is Estopped from Asserting Coverage Defenses**

Amerisure next argues that TBIC is estopped from asserting any policy defenses to coverage for the Park District and Sollitt because TBIC failed to defend or to seek timely declaratory relief. The court disagrees.

"If, comparing the allegations of the underlying complaint with the insurance policy, any potential for coverage for the lawsuit exists, then an insurer must either (1) seek a declaratory judgment regarding its obligations and rights under the policy or (2) defend the insured under a reservation of rights." Archer Daniels, 785 F. Supp. 2d at 732. "If the insurer takes neither course and a court later determines that the insurer owed a duty to defend in the underlying claim, then the insurer is estopped from raising policy exclusions or noncoverage as a defense in a coverage action." Id. (cleaned up).

Here, TBIC took the first course of action by filing its counterclaim seeking a declaratory judgment over its obligations. The issue is whether it acted promptly. "Where an insurer determines that it does not owe the insured a duty to defend and seeks a declaratory judgment, the insurer must act 'promptly' or 'in a timely manner' to avoid estoppel." Zurich Specialties London Ltd. v. Vill. of Bellwood, Ill., No. 07 CV 2171, 2011 WL 248444, at *10 (N.D. Ill. Jan. 26, 2011) (citation omitted). Courts in Illinois "have used three different approaches in determining what qualifies as prompt or timely action":

> The first approach deems an action timely if filed before the conclusion of the underlying litigation. . . . The second approach looks at whether the insured delayed filing or responding to a declaratory judgment action until trial or settlement was imminent. . . . . The third approach considers an insurer to have timely sought declaratory relief if filed within a reasonable time of learning of the underlying action. . . .

Id. (citations omitted); see also Santa's Best, 611 F.3d 349-50 ("Illinois courts have three tests to measure the timeliness of the declaratory action.").

Amerisure has not shown that TBIC's filing was untimely under any of these approaches. As for the first approach, "[t]he action for declaratory judgment, even though initiated by [Amerisure], was brought prior to the resolution of the [Aleman] action," and TBIC has "actively sought an adjudication of its rights by filing a counterclaim for declaratory judgment and a motion for [summary] judgment." Pekin Ins. Co. v. Allstate Ins. Co., 329 Ill. App. 3d 46, 50 (1st Dist. 2002) (rejecting Pekin's estoppel argument where Pekin filed declaratory judgment action, Allstate filed a counterclaim and motion for judgment on the pleadings, and the underlying lawsuit settled a few days later).

As for the second approach, there is no evidence in the record that trial or settlement in the Aleman case was imminent when TBIC counterclaimed in August 2025. Indeed, Aleman had just filed his third amended complaint three months earlier.

And as for the third approach, TBIC's timing was not unreasonable under the circumstances here. Aleman filed his complaint in January 2024. But Sollitt and the Park District did not make their first tender to TBIC until July 2024—after Aleman filed his first amended complaint. Aleman thereafter filed a second amended complaint in September 2024, after which, at the end of October 2024, Amerisure sent its first tender to TBIC and Sollitt its second tender to TBIC. Amerisure then filed this case in April 2025, Aleman filed the third (now-operative) amended complaint in the state case in May 2025, and TBIC filed its counterclaim in August 2025. Given this timeline of events, the court cannot say that TBIC's timing falls into unreasonable territory here. See Nautilus Ins. Co. v. Bd. of Directors of Regal

Lofts Condo. Ass'n, 764 F.3d 726, 733 (7th Cir. 2014) (explaining that a five-month delay in filing a declaratory action after being informed of insured's second amended complaint was not unreasonable, but noting that a twenty-three month delay "would likely be an unreasonable delay").

The court thus denies Amerisure's motion for summary judgment on estoppel.

**CONCLUSION**

For the above reasons, the court grants in part and denies in part plaintiff Amerisure's motion for summary judgment [42]. The court grants summary judgment in Amerisure's favor: holding that TBIC has a duty to defend the Park District and Sollitt in the underlying lawsuit; and holding that TBIC must reimburse Amerisure for the defense costs incurred for Sollitt and the Park District. But the court denies Amerisure's motion on the issue of estoppel. The court further denies defendant TBIC's cross-motion for summary judgment [47]. The parties are directed to submit a joint status report by August 26, 2026, explaining whether any issue is left in this case.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: August 11, 2026**